The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick. The appealing party has not shown good ground to receive further evidence; rehear the parties or their representatives, but has shown good ground to reconsider the evidence with regard to the plaintiff's attorney fee assessment against the defendant. Consequently, the Opinion and Award is modified.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On 23 October 1992, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Defendant was a duly qualified self-insured employer.
4. In June 1993, plaintiff returned to work for another employer earning wages equal to or greater than the wages he earned while employed by defendant.
5. An Industrial Commission Form 22, Wage Chart is stipulated into evidence.
6. A set of plaintiff's employment and medical records received from plaintiff's counsel on 14 December 1995 is admitted into evidence.
EVIDENTIARY RULINGS
The objections appearing in the deposition of Dr. Boyle are OVERRULED except for the objections appearing on pages 21 and 26 which are SUSTAINED.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-nine years old. Plaintiff began working for defendant during the summer of 1992. Prior to his employment by defendant, plaintiff worked as a truck driver.
2. While employed by defendant, plaintiff was responsible for operating a leaf vacuuming machine. Plaintiff's average weekly wage was $188.79. Plaintiff used the leaf machine to remove leaves and other lawn debris from roadsides where it had been raked by the town's residents. The leaf vacuuming machine was attached to a dump truck. The rear of the dump truck had four sides and a floor but was open at the top.
3. The machine vacuumed the debris through a large hose, into a grinding mechanism and then sprayed the ground debris, or mulch, into the rear of the dump truck. The machine deposited the mulch into the rear of the truck with sufficient force to push thick clouds of dust from the truck's open top. The dust clouds, which consisted of ground leaves, pine straw and dirt, would cover plaintiff as he maneuvered the large hose to vacuum the debris.
4. Plaintiff operated the leaf machine from 10 August 1992 through 23 October 1992. On 23 October 1992, plaintiff was coughing and experiencing shortness of breath. He first presented to an urgent care facility. He was then sent to Cape Fear Valley Medical Center where he was admitted to the intensive care unit for approximately thirty-six hours before being transferred to University of North Carolina Hospitals.
5. When plaintiff arrived in Chapel Hill, he was in critical condition and he was placed on mechanical ventilation. After receiving treatment in an intensive care unit for eight days, he was moved to a general care floor where he remained for six days before being discharged. Plaintiff's coughing and shortness of breath were caused by hypersensitivity pneumonitis.
6. Following his release from the hospital, plaintiff continued experiencing shortness of breath as well as symptoms similar to those caused by asthma. Plaintiff's continued shortness of breath resulted from lung damage caused by his hypersensitivity pneumonitis. Plaintiff's asthma-like symptoms resulted from hyperactive airway syndrome which was also caused by his hypersensitivity pneumonitis. These conditions are permanent.
7. Plaintiff's breathing difficulties are exacerbated by humid air conditions and limit his ability to perform work requiring physical exertion. The condition of plaintiff's lungs is permanent and will require him to use inhaled corticosteroids, systemic steroids and a bronchodilator.
8. In addition to his breathing problems, plaintiff complained of experiencing intermediate memory loss. The evidence of record is insufficient to prove by its greater weight that any memory loss sustained by plaintiff resulted from the incident on 23 October 1993.
9. Hypersensitivity pneumonitis is a lung injury typically caused by inhalation of organic dust. Plaintiff's hypersensitivity pneumonitis was caused by his inhalation of the dust produced during his operation of defendant's leaf machine. As a result of his employment as a leaf machine operator, plaintiff was at an increased risk of developing hypersensitivity pneumonitis as compared to members of the general public not so employed.
10. As a result of the incident on 23 October 1992, plaintiff was incapable of earning wages from defendant or any other employer from 24 October 1992 through 1 June 1993, when he returned to work for another employer.
11. Lungs are important internal organs, the loss or injury to which no compensation is payable under any section of N.C. Gen. Stat. § 97-31 other than N.C. Gen. Stat. § 97-31 (24).
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's hypersensitivity pneumonitis was due to causes and conditions characteristic of and peculiar to his employment with defendant, was not an ordinary disease of life to which members of the general public not so employed were equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. §97-53 (13); Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
2. As a result of his occupational disease, plaintiff is entitled to payment of temporary total disability compensation at the rate of $125.86 per week from 24 October 1992 through 1 June 1993. N.C. Gen. Stat. § 97-29.
3. As a result of his occupational disease, plaintiff sustained injuries to his lungs for which he is entitled to equitable compensation of $16,000.00. N.C. Gen. Stat. §97-31 (24).
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of his occupational disease for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen his period of disability. N.C. Gen. Stat. § 97-57; N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $125.86 per week from 24 October 1992 through 1 June 1993. This amount shall be paid directly to plaintiff in a lump sum.
2. Defendant shall pay plaintiff equitable compensation of $16,000.00 for injuries to his lungs. This amount shall be paid directly to plaintiff in a lump sum.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of his occupational disease for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen his period of disability.
4. Defendant shall pay the costs.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
S/ _________________________ COY M. VANCE COMMISSIONER
DCS:bjp